1  Christopher W. Keegan, Bar No. 232045
   KIRKLAND & ELLIS LLP
2  555 California Street
3  San Francisco, CA 94104
   Telephone:    (415) 439-1882
4  Facsimile:    (415) 439-1682
   Email: ckeegan@kirkland.com
5
6  Adam Nyhan (admitted in New York, *pro hac vice* application pending)
   CONSTANTINE CANNON LLP
7  450 Lexington Avenue
   17th Floor
8  New York, NY 10017
9  Telephone:    (212) 350-2772
   Facsimile:    (212) 350-2701
10 Email: anyhan@constantinecannon.com

11 *Attorneys for Plaintiff*
12 DISCOVER FINANCIAL SERVICES, INC.

13            UNITED STATES DISTRICT COURT
14           NORTHERN DISTRICT OF CALIFORNIA
              SAN FRANCISCO DIVISION
15

| | |
|---|---|
| 16 DISCOVER FINANCIAL SERVICES, INC. | : **Case No.** |
| 17            Plaintiff, | : **Case Pending in S.D. N.Y.:** |
| 18    – against – | : **Case No. 04 Civ. 7844 (S.D.N.Y.)(BSJ)** |
| 19 | : |
| 20 VISA U.S.A. INC., VISA INTERNATIONAL | : **NOTICE OF MOTION, AND** |
| SERVICE ASSOCIATION, MASTERCARD | **MOTION TO COMPEL** |
| 21 INCORPORATED and MASTERCARD | **COMPLIANCE WITH SUBPOENA** |
| INTERNATIONAL INCORPORATED, | ***DUCES TECUM* BY NONPARTY** |
| 22 | : **EDGAR, DUNN & COMPANY** |
| 23            Defendants. | : |
| 24 | : **Hearing: May 9, 2007** |
| 25 | : **Time:      9:00 a.m.** |
| 26 AMERICAN EXPRESS TRAVEL RELATED | : |
| SERVICES COMPANY, INC. | : |
| 27 | : |
| 28            Plaintiff, | : |

1    — *against* —

2    VISA U.S.A., INC. *et al.*

3                        Defendants.

4

5

6                    **NOTICE OF MOTION**

7        TO NONPARTY EDGAR, DUNN & COMPANY AND THE PARTIES TO THIS

8    CASE AND THE RELATED CASE *AMERICAN EXPRESS TRAVEL RELATED SERVICES*

9    *COMPANY, INC. V. Visa U.S.A., INC. ET AL.* (CASE NO. 04 CIV. 8967) (S.D.N.Y.) (BSJ)

10   AND THEIR ATTORNEYS OF RECORD:  PLEASE TAKE NOTICE that at 9:00 a.m. on May

11   9, 2007, or soon thereafter as Plaintiff Discover Financial Services, Inc. ("Discover") and

12   nonparty Edgar, Dunn & Company ("EDC") may be heard, Discover will move this Court to

13   compel EDC to comply with a subpoena *duces tecum* served by Discover in the above-captioned

14   case pending in the United States District Court for the Southern District of New York (the

15   "Subpoena").

16       As detailed in the accompanying Memorandum, Discover seeks an Order compelling

17   EDC within ten days to produce documents that are responsive to the Subpoena and that concern

18   the following issues:

19       1.    Discover and American Express Travel Related Services Company, Inc.

20             ("AmEx"), the plaintiff in a related lawsuit;

21       2.    issuance of credit and debit cards;

22       3.    rewards cards; and

23       4.    other miscellaneous EDC documents concerning competition in the alleged

24             relevant markets.

25

26

27

28

1

TABLE OF CONTENTS

2   TABLE OF AUTHORITIES ............................................................................ 4

3   MEMORANDUM IN SUPPORT OF MOTION ............................................. 5

4   PRELIMINARY STATEMENT .................................................................... 5

5   FACTUAL BACKGROUND .......................................................................... 6

6

7   ARGUMENT .................................................................................................. 8

8   I.     LEGAL STANDARDS .................................................................... 8

9   II.    DISCOVER IS ENTITLED TO EDC'S RESPONSIVE DOCUMENTS BECAUSE
           THEY ARE RELEVANT TO THE CORE OF DISCOVER'S CASE. ............................ 9

10

11        A.     Documents Concerning Issuance of Credit and Debit Cards ................................ 10

12        B.     Documents Concerning Rewards Card Products ................................ 11

13            1.  Documents produced by MasterCard demonstrate that the Payment Dynamics
                 materials are relevant and responsive. ........................................ 12

14

15            2.  EDC's confidentiality objection is adequately addressed by the Joint Protective
                 Order governing this case. ........................................ 13

16        C.     Other Documents Concerning Discover and American Express ........................... 13

17        D.     Miscellaneous EDC Documents Concerning Competition in the Relevant Markets
             ................................................................................................................ 14

18

19   CONCLUSION ................................................................................................ 16

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

3  CASES

4  *American Express Travel Related Services Co., Inc. v. Visa U.S.A., Inc. et al.*, Case No. 04 Civ.
5  8967 (S.D.N.Y.) (BSJ) ............................................................................................................ 5

6  *Gonzales v. Google, Inc.*, 234 F.R.D. 674, 679 (N.D. Cal., March 17, 2006) ............................... 8

7  *In re Intel Corp. Microprocessor Antitrust Litigation*, 2007 WL 137152, at *5 (D. Del. Jan. 12,
8  2007) ............................................................................................................................................. 9

9  *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, MDL-05-1720
   (JG) (JO) ...................................................................................................................................... 6
10

11  *In re Visa Check/MasterMoney Antitrust Litigation* ("*In re Visa Check*"), 297 F. Supp. 2d 503
    (E.D.N.Y. 2003), *aff'd sub nom. Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d
12  Cir. 2005) ..................................................................................................................................... 6

13  *Riedel Intern., Inc. v. St. Helens Investments, Inc.*, 633 F.Supp. 117, 119 (D. Or. 1985) .............. 9

14  *United States v. Dentsply Int'l, Inc.*, 2000 WL 654286, at *5 (D. Del. May 10, 2000) ................. 9

15  *United States v. Int'l Business Machines*, 83 F.R.D. 97 (S.D.N.Y.1979) ....................................... 9

16  *United States v. Visa U.S.A.*, 344 F.3d 229 (2nd Cir. 2003), *cert. denied*, 543 U.S. 811 .............. 6

17

18

19

20

21

22

23

24

25

26

27

28

1

## MEMORANDUM IN SUPPORT OF MOTION

2    For the reasons set forth below, Plaintiff Discover moves this Court to enforce the

3    Subpoena that it served on nonparty Edgar, Dunn & Company ("EDC").

4

5

## PRELIMINARY STATEMENT

6    This case concerns competition between the major credit and debit card networks – Visa,

7    MasterCard, American Express, and Discover – for card-issuance contracts with banks.  This

8    motion seeks documents created by EDC, a management consultant, concerning advice that it

9    gave MasterCard about competing for bank contracts (and other relevant issues) and advice that

10    it gave a bank on the profitability of issuing cards over Discover's network.  Discover

11    subpoenaed EDC in 2006 because, as a longtime consultant to MasterCard (a defendant in this

12    case and in a related case brought by American Express[1]), Discover believed that EDC would

13    possess documents relevant to Discover's claims.  Discover carefully limited the Subpoena to the

14    most highly relevant documents.  It further narrowed the scope of the Subpoena through a series

15    of meet-and-confers and other good-faith attempts to negotiate.

16    EDC's response has been a litany of stalling tactics designed to frustrate discovery to

17    which Discover is entitled.  For more than a year after receiving the Subpoena, EDC did not

18    produce a single document that it had not already produced in other litigations.  On March 22,

19    realizing the relevance of documents in its possession, it made a small and deficient production.

20    In a final conference on March 29, EDC refused to commit to a production of its relevant

21    documents.  While EDC has stated that it will produce additional documents, it has neither done

22    so nor committed to a date certain for doing so.  With a May 31, 2007, fact discovery cutoff fast

23    approaching, Discover is forced to move to compel EDC's compliance with the Subpoena.

24

25

26

27

28

---

[1] *American Express Travel Related Services Co., Inc. v. Visa U.S.A., Inc. et al.*, Case No. 04 Civ. 8967 (S.D.N.Y.) (BSJ).  American Express also named several banks as defendants in its case.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## FACTUAL BACKGROUND

Discover commenced this action against Visa and MasterCard in 2004.  Ex. 1, Discover's First Amended Complaint and Jury Demand.  It is a follow-on to *United States v. Visa U.S.A.*, 344 F.3d 229 (2nd Cir. 2003), *cert. denied*, 543 U.S. 811 (2004), in which the Second Circuit held that Visa and MasterCard, by enacting and enforcing "Exclusionary Rules" that prohibited their member banks from issuing cards over Discover's and American Express's networks, had violated the Sherman Act.  *Id.* at 242.  The Second Circuit further held that Visa and MasterCard harmed Discover and American Express by preventing them, via the Exclusionary Rules, from using banks as a distribution outlet for their cards.  *Id.*  In this case, Discover seeks damages from Visa and MasterCard for the harm their Exclusionary Rules inflicted upon it.  Ex. 1.

EDC is not the typical nonparty that is somewhat removed from the conduct at issue in a case.  Rather, EDC is closely connected to MasterCard, one of the primary defendants in this case, and to conduct by MasterCard that is among the central issues in this case.  As a longtime consultant to MasterCard, EDC has advised it for decades on a host of issues relevant to Discover's claims.  Ex. 2 (June 21, 1995 presentation by EDC to MasterCard titled *MasterCard International Interchange Discussion*) at MD0915-1128 (listing projects that EDC has done "with MasterCard and industry" from 1978 to the 1990s).  It has produced documents in at least three other cases with issues overlapping this case.[2]  Furthermore, several EDC employees are former employees of MasterCard and Visa and their member banks (including JPMorgan Chase, a Defendant in the *American Express* case).[3]  EDC is thus a prominent player in the payments industry.

---

[2] *In re Visa Check/MasterMoney Antitrust Litigation* ("*In re Visa Check*"), 297 F. Supp. 2d 503 (E.D.N.Y. 2003), *aff'd sub nom. Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96 (2d Cir. 2005); *United States v. Visa U.S.A., supra*; *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, MDL-05-1720 (JG) (JO).

[3] Ex. 3, Ex. 4, Ex. 5, Ex. 6 (biographical pages from EDC's website, www.edgardunn.com, last visited March 17, 2007, for Alan Schulteis, a former employee of MasterCard; Ron Mazursky, MasterCard and JPMorgan Chase; Ulf Geismar, Visa; Romina Abal, Bank of America).

1    Discover subpoenaed EDC on February 16, 2006.  Ex. 7 (Discover's subpoena).  EDC

2  served objections and responses on April 21, 2006.  Ex. 8 (April 21, 2006 letter from G. Carter to

3  A. Nyhan).  In an attempt to negotiate a reasonable document production, Discover met and

4  conferred with EDC many times and substantially narrowed its document requests.  *See, e.g.*, Ex.

5  9 (March 16, 2006 letter from A. Nyhan to G. Carter), Ex. 10 (April 7, 2006 letter from A.

6  Nyhan to G. Carter).  Discover further agreed to allow EDC to limit its search to key employees'

7  files and to let EDC conduct an electronic search of its electronic files by suggested keywords

8  rather than review hard copies.  Ex. 10 at 2, Attachment B.[4]  In addition, Discover suspended the

9  Subpoena for several months while it reviewed MasterCard's production in order to minimize

10  any duplicative requests to EDC.

11    Discover also provided EDC with an extremely detailed guide to the responsive

12  documents that Discover believed were in its possession.  Ex. 12 (November 21, 2006 letter from

13  A. Nyhan to G. Carter) ("the November 21, 2006 letter").  This guide provided the dates, titles,

14  and subject matter of key EDC documents, and identified the EDC employees involved in their

15  creation.[5]  To address any relevance concerns, Discover gave EDC copies of the materials

16  produced by other parties that led Discover to request these documents.

17    EDC's response has been an exercise in foot-dragging and excuses.  For three months

18  (from November 2006, when Discover resumed negotiations with EDC after reviewing the party

19  productions, until February 2007), EDC claimed that holidays and two employees' travel

20  schedules would prevent the entire company from producing documents.  During this period,

21  EDC also refused even to take a position on whether it would produce the documents requested

22  in the November 21 letter.

23

24  [4] Contrary to EDC's representations, Discover offered the search terms not as *additions to* the
Subpoena but as an *alternative* to it, intended to minimize the burden on EDC by permitting it to
25  rely on electronic searching rather than reviewing hard copies.  Ex. 11 (January 22, 2007 letter
from A. Nyhan to G. Carter).
26

27  [5] Seeking to justify its failure to comply with Discover's subpoena, EDC in the eleventh hour has
suggested that the documents outlined in the Nov. 21 letter are "new" demands outside the scope
28  of the subpoena.  That is false.  As Discover repeatedly explained to EDC's counsel, each
request is a sub-set of a request in the subpoena.

1    In February, EDC finally conceded the relevance of most of Discover's requests and

2  agreed to produce documents responsive to them.  Ex. 13 (February 14, 2007 letter from G.

3  Carter to A. Nyhan) (the "February 14, 2007 letter").  EDC produced documents on March 22.

4  That production, however, was inadequate.  Many of the documents that it produced were

5  publicly available; others were materials that Discover never even requested.  The production

6  also omitted several key categories of documents that Discover has requested.

7    EDC's stated reasons for its refusal to comply with the Subpoena are unavailing.  First,

8  EDC makes impermissible objections as to two categories of documents (concerning card

9  issuance and rewards products, discussed below).  Second, while EDC agreed to produce certain

10  categories of documents, it still has neither done so nor committed to a date certain for doing so,

11  and the few documents that it has produced make it clear that it has not searched its files for

12  responsive documents diligently.

13    In a final attempt to avoid motion practice, Discover conferred with EDC on March 29.

14  Claiming once more that the travel schedules of its counsel and employees prevented it from

15  producing documents, EDC again refused to commit to production.

16    Fact discovery will conclude on May 31, 2007.  Ex. 14 (Sept. 12, 2006 Stipulation and

17  Order Amending Case Management Order).  With that deadline fast approaching, Discover

18  cannot afford to indulge EDC's ploys any longer.

19

20  <center>**ARGUMENT**</center>

21  **I.    LEGAL STANDARDS**

22    Rules 45 and 37 of the Federal Rules of Civil Procedure govern nonparty discovery.

23  Fed. R. Civ. P. 45; Fed. R. Civ. P. 37.  The "scope of discovery through a subpoena is the same

24  as that applicable to rule 34 and other discovery rules."  *Gonzales v. Google, Inc.*, 234 F.R.D.

25  674, 679 (N.D. Cal. 2006) (quoting Rule 45 advisory committee's note (1970)).  Rule 34 adopts

26  the scope of discovery set forth in Federal Rules of Civil Procedure 26(b).  *Id.*  Under Rule

27  26(b), "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the

28

1  claim or defense of any party . . . [and that] appears reasonably calculated to lead to the

2  discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

3         Discovery is granted even more liberally in antitrust cases. *See, e.g., In re Intel Corp.*

4  *Microprocessor Antitrust Litig.*, No. 05-1717, 2007 WL 137152, at *5 (D. Del. Jan. 12, 2007)

5  ("The broad scope of discovery permitted by Rule 26 has been held to be particularly appropriate

6  in antitrust cases.") (citing *U.S. v. Dentsply Int'l, Inc.,* no. Civ. A. 99-5-MMS, 2000 WL 654286,

7  at *5 (D. Del. May 10, 2000)); *Riedel Int'l., Inc. v. St. Helens Invs., Inc.*, 633 F. Supp. 117, 119

8  (D. Or. 1985) ("Discovery in antitrust litigation is liberally granted.") (citing *United States v.*

9  *Int'l Bus. Machs.*, 83 F.R.D. 97 (S.D.N.Y.1979)).

10

11  **II.    DISCOVER IS ENTITLED TO EDC'S RESPONSIVE DOCUMENTS BECAUSE**
12         **THEY ARE RELEVANT TO THE CORE OF DISCOVER'S CASE**

13         This case concerns competition between payment card networks for banks' card-issuing

14  business.  The documents that Discover seeks from EDC all concern some aspect of that

15  competition, specifically: (A) issuance of credit and debit cards; (B) rewards card products; (C)

16  other EDC analyses concerning Discover and American Express; (D) several miscellaneous

17  documents concerning competition in the alleged relevant markets. Ex. 10, Ex. 11.[6]

18         These documents are relevant to Discover's claims in this case and are reasonably

19  calculated to lead to the discovery of admissible evidence.  As such, they easily satisfy the

20  Federal Rules' liberal discoverability standards.  Therefore, EDC should be compelled to

21  produce them.

22

23

24

25

26

27

28  [6] This list of document categories consolidates several bold-text headings used in the November
21 letter (Ex. 12) and other correspondence attached as exhibits hereto.

**A.**     <u>Documents Concerning Issuance of Credit and Debit Cards</u>

*Discover's request.*  Issuance of credit and debit cards is the crux of Discover's case. Discover claims that it would have profited from banks' issuance of credit and debit cards over Discover's network but for the illegal Visa and MasterCard rules barring banks from doing so. EDC analyses of banks' and networks' issuance strategies, therefore, go directly to Discover's claims.

Discover requested that EDC produce documents concerning: (a) banks' strategies for which types of cards to issue; (b) banks' analysis or consideration of whether to issue cards over the Discover, American Express, Visa or MasterCard networks, including analysis that EDC did for Wells Fargo bank in 2003 and 2004 concerning the issuance of Discover and/or American Express cards; and (c) MasterCard's or Visa's analyses of the strengths or weaknesses of any card issuer.  Ex. 11 at 2; Ex. 12 at 3; Ex. 15 (March 14, 2007 letter from A. Nyhan to G. Carter) at 1-2.  Documents produced by MasterCard and other parties and nonparties confirm that EDC was consulted on issuance issues and created documents responsive to these requests.  A document produced by Wells Fargo, for example, shows that EDC advised that bank to "negotiate with American Express and/or Discover (and address current constraints set by Visa/MasterCard [i.e., the Exclusionary Rules]) so that WFCS [Wells Fargo Card Services] can become an issuer of these cards."  Ex. 16 (Aug. 28, 2003 analysis by EDC for Wells Fargo titled "WFCS – Strategic Plan") at WFAMEX00952824-99.

*EDC's position.*  EDC has refused to undertake a search for the three categories of issuance-related documents listed above, on the ground that these requests are too broad to allow EDC to know where to begin a search of its files.  Ex. 13 at 4.  This objection is meritless.  EDC is a sophisticated consultant that frequently advises MasterCard and its member banks on issuance strategies.  It has more than enough information to guide its search for responsive documents.

EDC also maintains that it has not had enough time to find and produce the Wells Fargo documents.  Ex. 17 (March 28, 2007 e-mail from G. Carter to A. Nyhan).  EDC confirmed this in a March 29 conference.  EDC has had more than four months to review its files, however.  On

1    November 21, Discover requested "all analyses concerning issuance of . . . cards by banks," Ex.

2    12 at 3.  On March 14, Discover described the Wells Fargo project in more detail, stating the

3    project's time frame (2003-04), the specific Wells Fargo division for which it was prepared

4    (Wells Fargo Card Services), and the subject matter (a strategic plan including an analysis of

5    whether to issue Discover and/or American Express cards).  EDC should immediately produce

6    all documents concerning card issuance, including the Wells Fargo analysis.

7

8           **B.      Documents Concerning Rewards Card Products**

9           *Discover's request.*  Discover requests EDC's analyses of "rewards" card products

10    (credit and debit cards that reward consumers with airline miles, cash-back rebates or other

11    incentives).  Ex. 11 at 2; Ex. 12 at 3-4.  These analyses, based on surveys of consumer

12    preferences for various cards, contain a wealth of data and conclusions about consumers' and

13    banks' preferences for Discover's cards, and thus show that banks likely would have issued

14    Discover's cards in the absence of the Exclusionary Rules.  One example of such rewards-related

15    documents is a series of EDC analyses, published in 2000, 2004 and 2005, titled "Payment

16    Dynamics."

17           *EDC's position.*  EDC refuses to produce the Payment Dynamics analyses.  It objects on

18    the grounds that the analyses are irrelevant, nonresponsive, proprietary and confidential.  Ex. 13

19    at 4.[7]  None of EDC's objections withstands scrutiny.

20

21

22

23

24

25

26    _____

27    [7] EDC has agreed to produce only "general descriptive materials and public presentations" concerning Payment Dynamics, Ex. 13 at 4, and on March 22 produced some such materials. These were simply brief promotional materials for the Payment Dynamics analyses, however,

28    and as such, do not satisfy Discover's subpoena.

1.    **Documents produced by MasterCard demonstrate that the Payment Dynamics materials are relevant and responsive.**

While no party or nonparty has produced the Payment Dynamics analyses themselves, other documents produced by MasterCard show Payment Dynamics' relevance to Discover's claims.  They show that Payment Dynamics concluded that:

- from 2000 to 2004— a period in which defendants' Exclusionary Rules barred banks from issuing Discover's cards—rewards cards were a critical growth area for card-issuing banks;[8]

- card-issuing banks found rewards cards to be far more profitable than standard cards;[9]

- consumers highly valued rewards as a factor in choosing a credit card;[10]

- Discover's rewards product was consumers' favorite;[11] and

- MasterCard should develop a strategy to respond to the threat posed by Discover's rewards products and other competing cards, and it should use Payment Dynamics materials in developing that strategy.[12]

Thus the Payments Dynamics studies are reasonably calculated to lead to the discovery of admissible evidence and EDC should be compelled to produce them.

---

[8] Ex. 18 (Dec. 17, 2003 draft of EDC presentation to MasterCard titled *Consumer Perspectives on Preferred Card Solutions*) at '677-78 (describing the presentation's reliance on Payment Dynamics data), '690 (noting that the percentage of consumers who preferred rewards/loyalty products more than doubled from 2000 to 2004, a larger increase than for any other type of card).

[9] Ex. 19 (March 16, 2005 EDC presentation for MasterCard titled *The US Market Challenge – A Strategic Turning Point*) at '972 (citing Payment Dynamics 2004 analysis for card-issuing banks' reports that issuing rewards cards is 15% to 500% more profitable than standard cards and that activation rates – a key metric for banks considering issuing cards over a card network – are 15-20% higher for rewards cards than for standard cards).

[10] Ex. 18 at '706 ("Consumers have been trained to look for rewards [when choosing a credit card], and they are still demanding them.").

[11] Ex. 18 at '694 (of all credit cards offering rewards features in 2004, "Discover takes the lead" with 49% of consumers preferring it); Ex. 20 (*PaymentDynamics 2005 Rewards and Loyalty Study*, an executive summary of the 2005 Payment Dynamics analysis) at '848 ("Discover still draws the greatest appeal" among consumers who choose cards based primarily on rewards features).

[12] Ex. 18 at '983, '984.

2.    **EDC's confidentiality objection is adequately addressed by the Joint Protective Order governing this case.**

A Protective Order has been entered in this case that covers documents produced by parties and nonparties.  Ex. 21 (Protective Order governing this case and the related *American Express* case, dated March 12, 2006).  Under that Protective Order, which Discover provided to EDC's counsel (Ex. 9 at 1), nonparties may designate documents as "HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL EYES ONLY" to ensure that no employee of any party or nonparty—not even in-house counsel—will see them.  Ex. 21 at ¶¶ 5, 14.

The Protective Order obviates any confidentiality concerns.  EDC nonetheless makes the conclusory objection that Payment Dynamics is "competitively sensitive and proprietary."  Ex. 13 at 4.  It has never explained, however, why the Protective Order's "HIGHLY CONFIDENTIAL" designation – of which dozens of other nonparties have availed themselves in this case – is not good enough for EDC.  Ex. 13 at 4.  Therefore its objection should be overruled and it should be compelled to produce the Payments Dynamics studies.

C.    **Other Documents Concerning Discover and American Express**

*Discover's request.*  In addition to the Wells Fargo and Payment Dynamics materials discussed above, Discover requests all other documents that EDC possesses concerning Discover or American Express, including analyses done in 1996 and 1998 relating to MasterCard's consideration of either a partnership with Discover to issue payment cards or of acquiring Discover outright.[13]  Ex. 11 at 1; Ex. 12 at 2.

*EDC's position.*  EDC has agreed to produce analyses concerning Discover and American Express to the extent they exist in EDC's files, Ex. 13 at 3, but has not done so.  On

_____

[13] For each category of documents Discover seeks from EDC, it has requested the following types of documents: (a) the "deliverable," or the final product that EDC gave to the client that commissioned the analysis; (b) drafts (hard copy or electronic) of the deliverable; (c) the contract or correspondence pursuant to which EDC created the deliverable; (d) backup materials such as notes of interviews; (e) e-mail or hard copy correspondence internal to EDC concerning a relevant project; (f) e-mail or hard copy correspondence between EDC and the client concerning the relevant project; and (g) any other documents relating to the relevant project. Ex. 9 at 1-2.

1    March 22, it produced a small number of these documents, but that production was inadequate.

2    Some of the documents concerning Discover were Discover's own financial statements filed

3    with the Securities and Exchange Commission and available to the public through the

4    Commission's website.  Others were articles from publicly available trade magazines; still others

5    were duplicates of each other.  Only a handful of the documents produced to date are substantive

6    analyses of Discover and American Express.  EDC has advised MasterCard for decades on a host

7    of issues concerning MasterCard's competition with Discover, American Express and other

8    rivals.  It is not plausible that EDC's March 22 production was based on a thorough search of its

9    files for such documents.  EDC should be ordered to complete a diligent search of its files and

10    produce all responsive, non-privileged documents concerning Discover and American Express.

11

12    **D.    Miscellaneous EDC Documents Concerning Competition in the Relevant
             Markets**

13

14    *Discover's request.*  Discover seeks one other specific document and one category of

15    documents relevant to its claims.[14]

16    1.    a March 2005 document titled "U.S. Market Challenge – A Strategic

17          Turning Point" and related documents such as drafts and correspondence

18          concerning it.  The final "deliverable" of this document, produced by

19          MasterCard, Ex. 19, demonstrates its relevance.  EDC created it just four

20          months after the United States Supreme Court denied MasterCard's

21          petition for *certiorari* in *United States v. Visa U.S.A.*, enjoining

22          MasterCard's Exclusionary Rule and forcing it to compete with Discover

23          for banks' contracts.  As noted above, based in part on EDC's Payment

24          Dynamics analyses, it concluded that cardholders preferred Discover's

25

26

27

28    [14] These requests are all contained (arranged differently) as the bold headings or sub-points thereof in Exhibits 11 and 12.

1    rewards product over those of all its competitors.[15]  This would have

2    interested banks in issuing Discover-branded cards.  As such, this

3    document and related documents are relevant to Discover's claims.

4        2.    documents concerning debit card products and the market for them.

5  *EDC's positions.*

6        1.    EDC has stated that it has not yet located the "U.S. Market Challenge"

7              document or the related documents (e.g., drafts and correspondence), but

8              did not confirm that it had completed a diligent search for them.  Ex. 13 at

9              5-6.  The documents produced by EDC to date do not contain these

10             documents.  It is highly unlikely that EDC retained no file copies of the

11             documents, as EDC finished the analysis only one year before it received

12             Discover's Subpoena.  EDC should be ordered to complete a diligent

13             search for it and produce it if found.

14       2.    EDC has agreed to produce the requested debit-related documents.  Ex. 13

15             at 5.  EDC's production to date, however, contains only a few documents

16             discussing debit products and the debit market in passing.  It is not

17             plausible that EDC has produced the yield of a thorough search of its files

18             for these documents.  Having been a consultant to MasterCard, Visa and

19             card-issuing banks throughout the 1990s as the debit market exploded,

20             EDC likely authored numerous debit-related analyses.  EDC should be

21             ordered to complete a diligent review of its files for responsive documents

22             and produce them immediately.

23

24  ///

25  ///

26  ///

27  ────────────────────

28  [15] Ex. 18 at '694 (of all credit cards offering rewards features in 2004, "Discover takes the lead" with 49% of consumers preferring it).

1

**CONCLUSION**

2   For the foregoing reasons, Discover respectfully requests that the Court grant this Motion

3   to Compel EDC to comply with its Subpoena.

4   Dated: April 4, 2007                                   Respectfully submitted,

5

6

7                                                          Christopher W. Keegan, Bar No. 232045
8                                                          KIRKLAND & ELLIS LLP,
                                                           555 California Street,
9                                                          San Francisco, CA  94104
                                                           Telephone:     (415) 439-1882
10                                                         Facsimile:     (415) 439-1682
                                                           Email: ckeegan@kirkland.com
11

12
                                                           Adam Nyhan (*pro hac vice* application
13                                                         pending)
                                                           CONSTANTINE CANNON LLP,
14                                                         450 Lexington Avenue,
15                                                         17th Floor,
                                                           New York, NY  10017
16                                                         Telephone:     (212) 350-2772
                                                           Facsimile:     (212) 350-2701
17                                                         Email: anyhan@constantinecannon.com

18

19                                                         *Attorneys for Plaintiff*
20                                                         DISCOVER FINANCIAL SERVICES, INC.

21

22

23

24

25

26

27

28